Good morning, Your Honors. My name is Paul Flum. I am appearing for Appellant Battelle Memorial Institute. I'd like to reserve three minutes of my time for rebuttal. This appeal presents two questions of plan interpretation. First one is when did the plaintiff, Mr. Dresel's employment with Battelle terminate under the provisions of the plan that govern leaves of absence? And the second question is whether Mr. Dresel needed to be employed by Battelle when he turned 55 in order to qualify for an early retirement benefit under Section 4.2 of the plan. Now here, the plan administrator made a determination based on the provisions of the plan governing these matters that Mr. Dresel was not entitled to the early retirement benefit. And because the plan grants discretion to the administrator to interpret the plan and make benefit determinations, that decision is entitled to deference and should be set aside only if it was arbitrary and capricious or otherwise unreasonable. Now let me address the first issue briefly, the question of the consequences of Mr. Dresel's failure to return to active employment at the end of his leave. That determination is grounded in the plan's definitions of employee and of leave of absence. The rationale for that determination was addressed in the plan administrator's written response to Mr. Dresel's appeal and in the briefs. I'm not going to repeat all of those arguments here today, but I do want to emphasize that the question of when Mr. Dresel's employment terminated was the only issue, the only ground for reversal that Mr. Dresel's counsel argued at the administrative appeal stage. Is there any dispute that the leaves of absence were approved? Pardon me, Your Honor?  No, there is no dispute. As to they were all approved? Correct, Your Honor. He applied in the proper manner and they were approved in the proper manner? Correct, Your Honor. And the issue is that under the definition of employee, an employee can be someone on a leave of absence, on an approved leave of absence, but the definition of approved leave of absence requires that employee to return to active employment immediately on termination of the leave, which didn't happen here. Even if the job doesn't exist anymore? That's correct, Your Honor. I mean, it wouldn't have been any different had Mr. Dresel not gone on leave and his job had been eliminated before he turned 55. The analysis would be the same. It's pretty weird to retroactively change someone's status that way. And of course, the record shows that there were contemporaneous records where he was in duty status. And then there's this retroactive change, not due to any fault of his own. Of course, he was ready to come back to work and the grant funding wasn't there and the position wasn't even for one day. It seems like a very peculiar term. It's an unusual term. It is a term that required interpretation by the plan administrator and she had discretion to do that. Now, to address Your Honor's point, the way the leave is set up, it essentially creates a period of limbo. Not a legal word, but Mr. Dresel, while on leave, he's not an employee. He's not receiving compensation from the company. His status is leave of absence. There's a condition subsequent that the plan provides in Section 1.19, the employment. If the condition subsequent doesn't occur, then Mr. Dresel's employment terminated at the beginning of the leave. And there's nothing inconsistent in the record. Mr. Dresel is shown to have been on leave of absence through this whole period. When he didn't return to active employment, the HR software reflected that his employment had been terminated as of the date that the leave began. So what about the plan's use of the phrase terminates employment is used elsewhere in the plan as well? Section 4.2, for example, uses the term terminates employment. How does that fit into this? Well, actually 4.3 is the section that refers to terminates employment, termination of employment. That's the deferred vested benefit provision. And that goes to the second issue, which is eligibility, the criteria for eligibility for the early retirement benefit under 4.2, which is what Mr. Dresel had inquired about. Now, 4.2 provides that an employee who retires, the word is retires, at or after early retirement age, which is defined as age 55, is eligible for the early retirement benefit. There's a separate provision, 4.3, that describes a deferred vested pension benefit. That benefit is also available to be elected on or after age 55, but that benefit is available to someone who has terminated employment. Different words used in the two sections. The plan administrator, who was asked to address eligibility under 4.2, read the word retires to mean termination of employment on or after early retirement age, on or after 55, which is the ordinary construction of the word. I mean, if you go back to section 4.1, which is the normal retirement benefit, that section of the plan states that a member who retires at normal retirement age of 65 is entitled to a normal retirement benefit. It's very clear in the context of that benefit, retires means stopping work for the employer in the ordinary sense of the word. 4.2 then describes an alternative benefit, the early retirement benefit, that the plan makes available to people who choose to retire between 55 and 65. They don't want to keep working all the way to age 65, and so the plan provides a reduced benefit, the size of which depends on when the member elects to receive it, that is available to people who retire from employment at Battelle after 55. 4.3, the deferred vested benefit, is providing a benefit to employees whose employment with Battelle ends before age 55. It could be somebody who worked for 10 years, 15 years. Right. Counsel, at the time the plan administrator was asked whether he qualified, I couldn't see in the record what she was asked to decide. Was she only asked to look at his eligibility for 4.2 benefit? Correct. And in fact... Could you tell me where that is? Yes. And my next question is going to be, did she tell him he might be eligible for all three benefits? All right. So if you turn, I think the clearest statement of this is in the appeal letter, which begins at ER 271. And in, at ER 273, the appeal letter states, the issue in this case is when Dr. Dressel's employment with Battelle terminated, and he goes on to say if it didn't terminate at the beginning of the leave, because he was less than 55, he wouldn't be eligible for early retirement. And the letter goes on to say that Mr. Dressel is not asking for the deferred vested benefit. My question was a little different. My question is whether the plan ever told him, in addition to telling him that he wasn't eligible under 2, oh, sorry, 4.2, whether the plan told him he was eligible under 4.3. No, the plan did not, and the plan wasn't required to do that. It made it very clear he wasn't interested in the 4.3 benefit. Would that, he be eligible for the 4.3 benefit as a, quote, member? Would that be the status? Yes. I mean, members are eligible for all four of the benefits that are in Article 4, including the deferred vested benefit. As long as he had 10 years of service, is that it? He had to have the service in, the years of service. The service requirement, a minimum service requirement for the people invested. Which he had, he had met that. You're right, Your Honor. If a member has not satisfied the minimum 10-year requirement, they're not eligible for any benefit. He's got that, so what else did he need? What else did he need? To be eligible for 4.3, for 4.3. He was and remains eligible for the 4.3 deferred benefit. He made it very clear in his inquiry to Battelle about the availability of 4.2 that he wasn't interested in 4.3, and I assume that that's because in looking at the way those two benefits are calculated, the actuarial reduction from the full benefit for 4.2 is from age 60. Right. Under 4.3, it's from age 65, so it clearly is, it would be. I understand your response, and your time's ticking, so could I get to my next question, if you could just forgive me for interrupting. My next question really goes to this 4.3 argument, and whether it is a new or different argument. The district court thought so. What is your best response to that? My response to that is, yes, it's an argument that was not made at the administrative stage, and the plan didn't need to make it. We've cited authority to the court. The Gallo case, I think, is the best authority from the Seventh Circuit that recognizes that all that ERISA requires is for the plan to identify the reason for the determination. Here it was termination of employment before he reached age 55. The plan is entitled... The termination of employment before he reached age 55 made him ineligible, according to your team, right, for 4.2 benefits, but not for 4.3 benefits? Correct. Okay. Correct. He remains eligible for the 4.3 benefit. Which is just an actuarially reduced benefit. As is the 4.2 benefit, but the reduction under 4.2 is smaller, depending on the age of the election. But the plan is entitled to explain its reasons for the benefit determination, the reasoning behind the reasons. That's what the Gallo case says. That was done in the district court. But, frankly, Your Honor, this Court could disregard the 4.3 issue. I mean, this case can be decided just looking at the plain language in 4.2, the use of the word retires, and whether the administrator engaged or arrived at a reasonable determination in construing that term in its ordinary sense. Did you want to reserve your remaining time? I would like to reserve my remaining time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Steve Frank. I'm the attorney for Evan Dressel. Counsel started by telling you that termination is the critical issue in this case. It's not. Termination of employment is not. First of all, Judge Peckman said so. She said it doesn't matter whether Mr. Dressel terminated employment in 2010 or in 2013. That is correct. To find out why that is correct, you have to look at 4.2, 4.3, and the other provisions in Article IV. They're not keyed to employment. They're keyed to member status. Termination is unemployment. Because members include former employees, as the district court pointed out, as well as current employees, that underscores why termination of employment is not important. Member status is employment important. 4.2, you'll look at the definition of 4.2. It refers you to other term provisions, and the district court was very careful to go through each and every element of what you have to meet to be a member and establish. I think the court pointed out that Mr. Dressel met all those elements. He was a member. What about retires? The court will observe that retires is not a defined term in this plan. However, the word retirement is a defined term in the plan, as the district court pointed out. Retirement means eligibility for the commencement of the benefit. That does not refer to when you're fired or leave because of lack of money. It refers to eligibility criteria such as your age. Mr. Dressel, when he first asked for the early retirement benefit, was 57 years old. He was only 54, as counsel pointed out, in 2010. This crazy retroactive look that the plan does. He became eligible the next year when he was still on year one of the three-year leave in 2011. He served the three-year periods. Then when there was no grant money, as the court points out. Let's just go back to the definitions. Retirement means when you're eligible for commencement of a benefit. Right. Any of the retirement or vested benefits need to have 10 years. Is that correct? Yes. There's a 10-year requirement of 10 years of services required for all the benefits. You have to be eligible for commencement of the benefit. I'm trying to get all the indicia of eligibility. One point is 10. We all agree. He had 17 years in 2010. He had 10. What is the commencement of a benefit for early retirement? 55? The benefit would commence once the benefit was granted. That's early retirement. You have to be 55. Let's take a look at plan section 4.2, which is ER 182. That describes the early retirement benefit. It lays out the eligibility for that benefit. Everyone agrees it's the first sentence. 10 years, at least 55. Not yet 65. Not 65. You have to, in ERISA and these plans, you need to be really particular. Each member who retires, they have to retire on or after your early retirement age. That's 55. Before your normal retirement age, that's 65. Then it says, is eligible to receive the early retirement benefit commencing on or after the age 55 date. By the time he applied, if I can use that word, he was 55, 57 actually. 57. If he was retired retroactively, he was not 55 yet. That's their argument, right? You don't retire retroactively. That's their argument. I know they're arguing it. Another way to look at it is, if at age 55, he was on leave status, correct? Yes, his leave began when he was 54 and continued until he was 57. I'm just trying to play this out with me. At 54, he's not yet eligible for anything other than to keep whatever. At 55, when he is on leave of absence, he's 55. I guess my question is, and maybe it's a question really also to the plan, is could, if you consider at 55, was his job still available to him? He was in leave status. I understand that. What they're saying now is, well, he didn't retire when he actually invoked the plan. There was no job, correct? Therefore, he couldn't retire at that point. Their formula, as I said, between February and April 2013, because he did not return from the three-year leave of absence that he had been in, you have to look back to when he first began the leave. There's no language in the plan that tells you to do that, but that's what they said. If you do look back to that date in February of 2010 and look at his age, he was only 54. Therefore, says the plan, not eligible for 4.2. My only question is, because there is no definition that gets you there, if he decided just after his 55th birthday, and he was on leave, if he decided on that day, age 55.1 day, that he now wants early retirement benefits, I guess the plan's view is, well, you would look back to when he was 54, and your view is, you would look to when he was 55.1. Do you see what I'm asking? Yes, and I don't think the plan ... That's not been considered. Obviously, that's a hypothetical. It is. I don't think they could say that, because they're relying on a provision that says, if you don't return at the end of your three years of leave, but when he was 55, he hadn't had three years of leave. Well, that's why I'm asking the hypothetical. Right. Okay. Well, I'm not, as you observed, the lawyer of the plan. Both the jobs still existed. I'm just trying to fit how different employees would fit in their definition and your definition, so if at 55.1, he invokes early retirement benefits, your position is, well, that's what, and where do you find support for that in the plan? Okay. Well, he's in leave status. He's a member. All right. I'm trying to decide whether he's an employee or a former employee, but he's a member either way. He's not under the gun of 1.23B4, because there hasn't been three years of leave that the plan could hang its hat on, so it seems to me, had he just asked for early retirement at that date, he's eligible under the literal language of 4.2 and the various definitional sections to which that first sentence returns. He would be asking for retirement after his early retirement age of 55. We said he's 55. It's before 65, obviously, and he should be eligible, according to that sentence, to receive the benefit on or after his early retirement date, which is also 55, so yes, had he asked in 2011 for his benefit, he would have gotten it. The difference being the three years, which they're in. The plan says that's what the difference is, and we disagree. That's right. Counsel, go ahead, please. Was there a point in time when your client inquired about early retirement? Before that period, February to April 2013? Not to my knowledge, and not in the record. Wait a minute. What about on January 2, 2012? There's a retrospective. If you were to terminate your employment with Battelle, immediately following your leave, you would fall under the early retirement reduction table for employees at least age 55 that have 10 years of experience. Are you reading from their brief or mine? I'm not reading from anybody's brief. I'm reading from the record. It seems to me ... Here's the real question I've got. There are excerpts in the record that indicate that his status wasn't changed until this retroactive entry, and that during that three years of employment, there's certainly fodder for an argument that he was continuing on, that he had not terminated, but I cannot tell from your brief, sir, whether you're continuing to argue about this retroactive change of status or whether you have accepted that that's the definition we should use. I think I said in my brief that we accept that as to employee status, the plan has said, and we do not dispute, that retroactively to 2010, he was no longer an employee. However, you don't have to be an employee because as a former employee, you're still a member. Okay. Just wanted to make sure I understood your position. It's a little unclear in the record, in the briefing. That's all right. All right. Council mentions the Gallo case, which is not from our circuit. Oh, I urge the court, if it hasn't done so already, to read Gallo. Just line it right up side by side with Harlech and tell me, are these the same cases? Is it the Seventh Circuit who decided Gallo? Whichever circuit it is, they don't apply our law and we do not apply theirs. It's quite clear from Harlech, 686F3rd, look at pages 719 to 721 and compare that to what the court's saying in Gallo, in Harlech. You have to cite, if the plan administrator wants to rely on a plan provision, she has to cite it. There's no reference in anything the plan administrator or Mr. Cecil, her underling, ever wrote to section 4.3. Maybe it didn't come up in this case, as Judge Pegman observed, until oral argument. You have to give the reasons. If there's more than one reason for denying your benefit, you can't just give one. You have to give them all. That's Harlech and the regulation at 29 CFR 25605031GII. I love these regs. Anyhow, that's Harlech. Gallo says that the plan can elaborate on the specific reasons stated by the plan administrator. The plan can make any argument, presumably in litigation, that bears on the rationality of the plan administrator's decision. That Gallo is not Harlech and Harlech is not Gallo. The law in this Court is obviously Harlech. Under either standard of review, the Court should uphold Judge Pegman's decision. She got it exactly right. What the plan seems to be saying is, we have a retires, a word not defined in the plan. It means something different from a defined word, retirement. Retirement is in section 1. something. 1.45 says what retirement is. You understand, that doesn't say termination of employment. Exact language, it's election of commencement of benefits under this plan. In the contemplation of plan counsel, the plan drafters, people write these things, they spend a lot of time doing that, the plan to mean election of commencement of benefits. In their heads, but not on paper, they decided that the undefined word, retirement, would mean termination of employment, a totally different thing that could happen at a totally different time. Well, plan drafters don't do that. If they really intended that the word retires could have a meaning different from retirement, they would have said so somewhere in section 1, right near 1.45. They would have put in a separate definition of retires. It doesn't make any sense. The second thing is, that if the court compares section 4.2 and 4.3, you'll notice, the court will notice that 4.2, also 4.1, also 4.4, all use the word retires. I'm on ER 182 going over to 183, but 4.3, the deferred vested benefit, the one that they say something about, that uses a member who terminates employment. There, the drafters used a different phrase for 4.3, not the phrase in the other sections in Article 4. If retires really meant terminates employment, they wouldn't have had to change terminology. They could have used the word retires, thinking, oh, it obviously means termination of employment. What's wrong with that is it doesn't. And so they had to change the terminology. So, let's see. I've used up all my time, magically, and probably almost all my words. Let's see if there's anything else. Unless the court has questions, thank you very much. Thank you. Counsel, could you just address this question that I was reading from earlier? ER 282, I'm sure you're familiar. In January of 2012, he did inquire of Battelle about what happens if I terminate early, and you know that entry, I'm sure. So, what is your response to this, please? He inquired, and he inquired about the early retirement benefit. And he was told he'd be eligible for early retirement, right? Right, which is If he was to terminate your employment after his leave. And so your response is, he didn't terminate it after his leave, even though he was told this during his leave. You're relying on the retroactive change of status, is that right? He inquired about his eligibility for early retirement. Right. And he was told by Mr. Cecil in the initial determination, he didn't qualify because he didn't return to active employment from the leave. This says, if you were to terminate your employment with Battelle, immediately following your leave, you would fall under the early retirement reduction table for employees at least age 55 and have 10 years or more vested service prior to July 1, 2009. At ER 282? Yes, Your Honor. Hold on. Okay. I want to make sure I'm not taking this out of context. I think that was still during his leave. It kind of goes back to Judge McEwen's question. So, two responses. First of all, this is not coming from the plan administrator. And the language is A benefits specialist, right? A benefits specialist at Battelle, is that right? Right. But the benefits specialists aren't charged with interpretation of the plan. I'm not trying to argue with you. I'm just trying to get the record right. No, I understand. Okay. So this is coming from what appears to be a benefits specialist. Okay. And it's ambiguous. It talks about terminating employment. And it doesn't get into the niceties of what that means in the context of the leave of absence. Right. So my hypothesis, maybe the answer to my question is yes. I mean, to put this in context, you're relying on the if you were to terminate your employment, and you're relying on the retroactive termination. Correct. Okay. Had he come back from the leave and terminated that day, he would have qualified for the early retirement benefit. So if I could just quickly address two points. On the definition of retirement in the plan, it's a defined term. It's a different term than the word retires in 4.2. The plan drafters very deliberately define terms they meant to be defined. And we've cited to the court many examples of judicial opinions that hold that a defined term in a contract or a statute or regulation doesn't control the meaning of an undefined term or an undefined variant of that term. And certainly the plan administrator didn't act unreasonably in proceeding from a similar understanding here, that retires in 4.2 means something different than retirement. Let me ask you the hypothetical I posed to Mr. Frank. And that is, the employee's got 10 years of service. He goes out on a leave at age 54. He has a three-year leave, and at one year after age 55, one day after he turns 55, he's still on leave. He says, I'd like to abandon my leave and get early retirement benefits. Does he get early retirement benefits? Well, if by abandon you mean I want to come back to full-time employment with Patel, yes. I want to come back and then I want to retire simultaneously. Well, but the same day, I mean, there would have to be, I think there's no real difference in that. Sure, if he returns to employment from the leave on or after age 55, he's eligible to elect early retirement. It could be the same day. All right. Thank you. If I could just... You can sum it up. Pardon me? I said you've gone beyond your time. All right. Thank you, Your Honor. If you had something to sum up, I was going to let you do that. Thank you.
judges: Hawkins, McKeown, Christen